No. 323

First Circuit

SULLIVAN v. NEW ORLEANS & NORTH-EASTERN R. R. CO.

(June 12, 1928. Opinion and Decree.)
(October 3, 1928 Rehearing Refused.)
(November 26, 1928. Writs of Certiorari and Review denied by Supreme Court.)

Ott & Rich, of Bogalusa, and Spencer, Gidiere, Phelps and Dunbar, of New Orleans, attorneys for plaintiff, appellee.

B. M. Miller, of Covington, and W. J. Suthon, Jr., of New Orleans, attorneys for defendant, appellant.

LECHE, J. Plaintiff owns lots 4 and 5 in Section 1, Township 8, South Range 14 East in the Greensburg Land District, Louisiana, included within the territorial limits of the Parish of St. Tammany. He alleges that defendant owns lands in Sections 40 and 41, in the same township and range, situated contiguous to and adjacent to his lots 4 and 5. That the boundary line between his said land and that of defendant has never been determined except by a private survey made on behalf of petitioner, which survey defendant is unwilling to accept. That it is necessary that said boundary be judicially determined, and with that end in view, plaintiff prays for the appointment of a surveyor by the Court and that said boundary be judicially ascertained and fixed in accordance with law.

The District Court thereupon appointed a surveyor, who proceeded to determine a boundary line between the lands of plaintiff and defendant, and the question involved in the present litigation is whether the report of the surveyor so appointed is correct and should be approved.

From a judgment approving and homologating the report of the surveyor thus appointed by the Court defendant has taken the present appeal.

It is conceded that the titles of both plaintiff and defendant emanate originally from the United States Government, that all of these lands were at one time surveyed under authority of that government, that plaintiff's land is bounded on the west by a line originally fixed by government surveys, and that defendant's land is bounded on the east by a line also fixed by government surveys. Whether the line

bounding plaintiff's land on the west and that bounding defendant's land on the east is the same line is one of the controlling issues in the case. According to the Government map filed in the record, there is a small stream indifferently called Brockman's Bayou and Brockman's River, which separates the land of the plaintiff from those of the defendant. According to the report of the surveyor appointed by the Court in the case, and the map which he has made and annexed as part of his report, Brockman's Bayou is entirely within the limits of plaintiff's lands. The line fixed by the Court's surveyor is west of Brockman's Bayou and is delineated as the one line of separation or the boundary line between the lands of plaintiff and the lands of defendant. At some points it is a considerable distance west of Brockman's Bayou and it is thus made to include lands west of Brockman's Bayou, as part of the lands owned by the plaintiff.

It is not disputed that where lands have been originally fixed and adopted by Government surveys, a re-survey of such lines must be confined to re-establishing them as originally fixed and located by the Government. It was therefore encumbent upon the surveyor appointed by the Court in this case, to ascertain where the original line forming the western boundary of plaintiff's lots 4 and 5 was located by the Government survey, and where the line forming the eastern boundary of defendant's portions of Sections 40 and 41 was located by the Government surveys, and eventually to ascertain whether these two lines are one and the same.

Plaintiff says in his brief that the line forming the eastern boundary of defendant's land is the same line as that forming the western boundary of his land. The same assertion is made in his testimony by the surveyor appointed by the Court in the case. When asked by counsel for defendant whether as a matter of fact, he had any field notes specifically describing the location of the western boundary of plaintiff's land, the surveyor answered that the western boundary of Section 1 (containing plaintiff's land) is the east boundary of Sections 40 and 41 (containing defendant's land). That may be true, but it is not supported by the Government map on file in the record, for that map shows Brockman's Bayou as separating the eastern boundary of defendant's land in Sections 40 and 41 from the western boundary of plaintiff's land on Section 1. Evidently the surveyor did not have any field notes, if any there are, showing the survey of lots 4 and 5 of plaintiff, and his answer is a conclusion which he draws from his survey of defendant's land.

In the surveyor's report there are numerout discrepancies between his findings, in courses and distances and especially in distances, from the courses and distances given in the Government field notes. It may be that he is right and that measurements and directions in the field notes are erroneous. These discrepancies are not great but they certainly show the necessity for the application of the rule of law that natural objects and monuments are more important than courses and distances in ascertaining the location of unknown and disputed lines. There might be error in measuring courses and distances, but there can be none in locating natural objects and monuments.

According to Article 828 of the Civil Code "when two estates are separated by a public road or by a water course which serves as a common limit, the action in boundary cannot be sustained in relation to them, unless the road or water course has experienced some change in its situation." The plat of survey made under Gov-

ernment authority, as before stated, shows that Brockman's Bayou separates the land of plaintiff from the land of defendant. The titles of both parties are derived from the Government and are predicated upon this survey. The evidence fails to show any change in the situation of Brockman's Bayou, except to the extent that there was some dredging to make a log pond, and some digging of barrow pits along the western bank of that bayou, but this in no way encroached upon plaintiff's land on the east side of the bayou.

Our view of the evidence in this case leads us to the opinion that the estate of plaintiff and defendant are separated by a water course, whose situation is not shown to have been changed, and that according to Article 828 of the Civil Code of Louisiana, the present action in boundary should not be sustained.

For these reasons the judgment appealed from is avoided, set aside and reversed, and plaintiff's demand rejected at his costs.

## ON APPLICATION FOR REHEARING

Per Curiam:

Our original opinion sufficiently sets forth the question submitted for decision in this case. We therein stated that according to the official plat of survey on file in the U. S. Land Office, the same plat upon which plaintiff's title is predicated, it appears that the lands of plaintiff and those of defendant are separated by a water course called Brockman's Bayou, and finding no evidence that the bed of this water course had been changed, we therefore held that plaintiffs' action should not be sustained and cited C. C. Art. 828 as authority for our finding.

In the amended orders of survey under which the eastern boundary lines of Sec-

tions 40 and 41 were established, the surveyor was expressly instructed in one instance to begin at the southeast corner of Crawford's claim (Sec. 40) on Brockman's River, thence down said river one mile; and in the other, to begin at the northeast corner of the claim of Wm. Brockman (Sec. 41) thence up Brockman's River and old West Pearl River, one mile, etc. The surveyor most presumably followed these instructions, the plat which he made of these surveys so indicates, and the line which he thus established is the eastern boundary line of Sections 40 and 41, the same line which according to the survey in the present case does not in fact follow Brockman's River.

We therefore believe that the conclusion which we first reached should remain undisturbed.

The application for rehearing is refused.

---

ELLIOTT, J., dissenting. The plaintiff Sullivan alleges contiguity and brings an action of boundary, contending that the western limits of lots 4 and 5 of Section 1, form the eastern limits of the headrights Nos. 40 and 41, T. 8, S. R. 14 E., Greensburg Land District of Louisiana, and vice versa, etc.

The contentions of the plaintiff are supported by a surveyor appointed by the Court to run the boundary in question. He is corroborated by another surveyor, who accompanied the survey in behalf of the defendant. The plat of the survey shows parcels of highland colored yellow on the plat and over which the boundary line is claimed to run, part of the highland being apportioned by the surveyor to the headrights as accretion, and part to the lots 4 and 5 of Section 1. There is no evidence to the contrary and the pres-

ent situation must be looked on as established.

But the amended order, directing that headrights 40 and 41 be located and surveyed, field notes of the government survey and plat made based thereon, approved July 12, 1852, shows Brockman's River or Bayou in 1824-1825, also in 1851-52, as a water course, issuing from old west Pearl River and serving as the common limit of said headrights and Section 1 in the same township and range from the place where it emerged to the place where it returned into the stream. The headrights are shown as situated on the western and Section 1 as situated on the eastern side of the same. Lots 2, 3, 4 and 5 of Section 1, together with a small parcel of other land are shown on the Government plat as forming an island with lot 4 situated north of and contiguous to lot 5. This was the situation at the time the headrights were located and under the law, C. C. 828, must fail as the majority of the Court holds, unless Brockman's Bayou is shown to have experienced a change in its situation since then. The plaintiff does not allege that the former situation has changed, but it is evident from the testimony on the subject that great changes have occurred. It was impossible for the lower court to escape that conclusion, but according to the showing made on the subject, the rights of the parties can not be acted on with any certainty without a further showing necessary to clear up the existing situation. According to the present showing, lots 4 and 5 of Section 1 are not now contiguous to each other and do not form an island, but quite an expanse of water intervenes between them and each constitutes an island. The patent from the State offered in evidence and under which plaintiff claims lots 4 and 5 of Section 1, states that these lots were sold according to an official plat of survey in the State Land Office. This plat was not offered in evidence. The rights of the plaintiff to part of the land called for by the patent should not be rejected without an examination of the plat because the action may lead to contradictory action as to other parts called for by the patent.

It is evident that Brockman's Bayou did exist as a river or stream and as a boundary limit at the time of the Government survey, but it is equally as evident that it is not now in its former place in existence as a stream. Parts of its old bed opposite the headrights and opposite lots 4 and 5 of Section 1 at the time of the Government survey are dead water, part highland, part low swamp, but the stream is not where it used to be. The stream has retired quite a distance eastward and southward and has ceased to separate the two headrights and the lots 4 and 5 of Section 1. And while that is true, the record does not show whether the lots 4 and 5 of Section 1, on the Government plat, and the lots 4 and 5 of Section 1 called for by the patent under which plaintiff claims, is the same ground, nor whether the lots 4 and 5 of Section 1 claimed by the plaintiff under the patent from the State and the two islands designated as lots 4 and 5 of Section 1, on the plat of the present surveyor, is the same ground, nor can it be said at present what connection, if any, exists between the two islands designated as lots 4 and 5 of Section 1 on the plat of the present surveyor, and the highland colored yellow on his plat.

The law on the subject of accretion, dereliction and islands formed by the retiring non-navigable streams should be taken into account and the suit instead of being dismissed, should, in my opinion, be remanded for a new trial and the parties given an opportunity, in view of the showing made, to amend their pleadings so as to apply to the situation.